## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

<table>
<tr><td>

ALICE ANDERSON, et al.,

     Plaintiffs,

     v.

CHARLES RAMSEY, *et al.*,

     Defendants.

</td><td>

Civil Action No. 04-56 (GK/JMF)

</td></tr>
</table>

## MEMORANDUM OPINION

This case was referred to me for resolution of <u>Plaintiffs' Motion for Protective Order</u> ("Motion for P.O."). For the reasons stated below, plaintiff's motion will be granted.

## INTRODUCTION

Plaintiffs[1] are former employees of the Public Safety Communication Center ("PSCC") of the Metropolitan Police Department ("MPD"). <u>Amended Complaint</u> ("Amended Comp.") at 4. "PSCC is the arm of the D.C. Police Department responsible for planning and coordinating the delivery of emergency communication services and trauma care to residents, workers, and visitors of the District of Columbia." <u>Id.</u> at 7. On January 15, 2003, PSCC received notice of a fire in the Dupont Circle area. <u>Id.</u> at 8. Although a fire truck was dispatched to the area, one person died in the fire. <u>Id.</u> An investigation immediately ensued. <u>Id.</u>

Plaintiffs claim that at the time of the investigation, Police Chief Ramsey ("Ramsey") was in the process of negotiating a new contract with the District of Columbia. <u>Id.</u> at 8. Plaintiffs

---

[1] Plaintiffs are Alice Anderson, Curtis Adamson, Betty Bibb, Jeri Butler, Gwendolyn Carey, Delphine Fennell, Jennette Miller and Justine Tolson.

further claim that as a result of the public furor that arose following the incident, Ramsey attempted to orchestrate a coverup. Id.  According to plaintiffs, Ramsey stated on public radio that he intended to fire some of the plaintiffs, while the investigation into the incident was ongoing, and conspired with several of his managers to intentionally or recklessly disregard the decisions from the administrative review process by terminating the employment of a number of the plaintiffs in retaliation for speaking publicly about the tragedy. Id. at 9.

Additionally, plaintiffs allege that the terminations were directed solely at African-Americans and that a Caucasian manager was not fired. Id. at 13-14.  Plaintiffs claim that when they notified Ramsey that his decision was racially motivated, he subsequently fired a co-defendant, Grossman, a Caucasian employee, to "disguise his partiality." Id. at 14.  Finally, plaintiffs allege that Ramsey's previous employment decisions further demonstrate a pattern of racial motivation. Id.

Specifically, plaintiffs bring this action for 1) violation of their civil rights due to race discrimination, 2) violation of their constitutional rights under due process and free speech grounds, 3) violation of their contractual rights due to race discrimination under §1981, 4) retaliation, 5) violation of the D.C. Whistle-blower Protection Act, and 6) intentional infliction of emotional distress.

## DISCUSSION

I.     The Discovery Sought

Defendants served plaintiffs with certain document requests, including the following requests for financial and medical information:

> 3.     All medical reports or document or copies thereof relative

to the injuries, damages, and/or the effects thereof sustained
to the plaintiff as a result of the incident(s) alleged in the
complaint.

4.      Any and all medical records, notes, bills, or other
documents related to any psychological, psychiatric, or
other professional treatment for mental suffering claimed
by plaintiff as a result of the incidents alleged in the
complaint.

8.      Copies of all wage and income records relative to the
plaintiff, including W-2 forms and State and Federal
Income Tax Returns for the past ten (10) years.

Motion for P.O., Exhibit 1 at 4-6.

In resisting the protective order, the District places primary reliance on In re Halkin, 598

F.2d 176, 188 (D.C. Cir. 1979) for the assertion that there is a presumption in favor of public

access to discovery materials that plaintiffs have not defeated.  But, that case was specifically

overruled in Seattle Times Co. v. Rhinehart, 467 U.S. 20, 29 (1984).  Any supposed presumption

in favor of public access to discovery material, as articulated in Harkin, did not survive the

Supreme Court's contrary conclusion in Seattle Times:

Moreover, pretrial depositions and interrogatories are not public
components of a civil trial.  Such proceedings were not open to the
public at common law, Gannett Co. v. DePasquale, 443 U.S. 368,
389, 99 S.Ct. 2898, 2910, 61 L.Ed.2d 608 (1979), and, in general,
they are conducted in private as a matter of modern practice. See
id., at 396, 99 S.Ct., at 2913-2914 (BURGER, C.J., concurring);
Marcus, Myth and Reality in Protective Order Litigation, 69
Cornell L.Rev. 1 (1983). Much of the information that surfaces
during pretrial discovery may be unrelated, or only tangentially
related, to the underlying cause of action. Therefore, restraints
placed on discovered, but not yet admitted, information are not a
restriction on a traditionally public source of information.

Id. at 33.

Hence, the district court unquestionably has discretion to seal documents produced in

discovery that were not introduced into evidence and were not relied upon by the court in rendering a decision. McConnell v. Fed. Election Comm., 251 F. Supp. 2d 919, 925 (D.D.C. 2003); Tavoulareas v. Washington Post, 111 F.R.D. 653, 658 (D.D.C. 1986).

The exercise of that discretion is informed by the factors identified in United States v. Hubbard, 650 F.2d 293, 313-22 ( D.C. Cir. 1980). See Willingham v. Ashcroft, No. CIV.A.02-1972, 2005 WL 159456, at *1 (D.D.C. Jan. 25, 2005). Those factors are: (1) the need for public access to the documents at issue; (2) the extent to which the public had access to the documents prior to the sealing order; (3) the fact that a party has objected to disclosure and the identity of that party; (4) the strength of the property and privacy interests involved; (5) the possibility of prejudice to those opposing disclosure; and (6) the purposes for which the documents were introduced. Hubbard, 650 F.2d at 324-25.

Obviously, application of those factors here mandates the issuance of the protective order. The public has never had access to plaintiffs' medical and tax records and there is no need for it to have access now.  Plaintiffs have objected to the disclosure of those documents and their objection is justified by the private, confidential nature of the information in those records. Finally, the documents are not in evidence but were produced in discovery and therefore any public interest in their disclosure is at its weakest. In re: Coordinated Pretrial Proceedings in Petroleum Products Antitrust Litig., 101 F.R.D. 34, 41 (C.D. Calif. 1984) (citing Tavoulereas v. Washington Post, 724 F.2d 1010, 1016 (D.C. Cir. 1984)).  Thus, the protective order should issue.

The District complains, however, that under the order plaintiffs have the right to designate any document as confidential and if it disagrees, the District must contest that

designation, which would in turn lead to additional litigation.  In my view, the problem the

defendants present is more apparent than real.  In Tavoulareas v. Piro, 93 F.R.D. 24, 29 (D.D.C.

1981), the court required a non-party to "simply note the confidentiality of certain documents

produced, based upon a relatively cursory review of the contents or source of the documents,"

before turning them over.  The court also stated:

> We recognize that flexibility will be required to accommodate the
> practical needs of the discovery process with the standards enunciated
> (in this case), particularly where the discovery embraces a large
> quantity of documents.  It may be appropriate, for example, for a trial
> court (on a proper showing) to issue a blanket protective order
> covering all documents in a large-scale exchange of files without
> prejudice to raising the merits of the protective order as applied to
> particular documents at a later time.  If a party wishes to disseminate a
> particular document, he might then inform the opposing party
> (precisely as plaintiffs have done here).  At that point the burden
> would revert back to the party resisting dissemination to establish
> "good cause" as applied to the particular document(s), consistent with
> the standards enunciated in this opinion.  This procedure is commonly
> used to preserve parties' right to assert claims of privilege with respect
> to particular documents in complex cases, while at the same time
> facilitating needed discovery.

Id. at 29, 30 n.4.  This court finds Tavoulareas' reasoning to be persuasive.  Paragraph 2 of the

Proposed Protective Order imposes upon plaintiffs the initial obligation to indicate what

documents they deem confidential.  If defendants disagree, and the parties cannot settle the

matter, plaintiffs must seek an order from this court.  That is consistent with the procedure

indicated in Tavoulareas and is no more burdensome upon the defendants than it has to be.

Defendants also claim that the protective order places too heavy a burden on the

government because they must, *inter alia*, severely limit access to the documents, clear all

individuals seeking to have access to the document, verify their understanding of the terms of the

protective order, and return all documents following the conclusion of the case. Id. at 5.  Given

that the only persons having any interest in seeing the records are the lawyers defending it and

their staffs, the burden imposed by the protective order upon the defendants is negligible.

Finally, defendants also complain that the protective order would create a Chinese fire-

wall between the various government entities working on the case and that this is akin to seeking

"to restrict the work product of opposing counsel within her own law firm." Opposition to

Plaintiffs' Motion for Protective Order at 9.

They propose that, if the court were to impose a protective order to cover plaintiffs'

medical and tax records, the protective order should not restrict the sharing of information

between the various members of the Office of the Attorney General for the District of Columbia,

regardless of which case, civil or administrative, they happen to be working on. Id.  Curiously,

although defendants then attempt to counter plaintiffs' argument that defendants' failure to

articulate a legitimate need for the documents on the part of the attorneys working on the

administrative claims is proof that no need exists, defendants do not then articulate any need for

the documents at the administrative level. Id. at 10.  Instead, defendants summarily conclude that

"the District's purported failure to provide the plaintiffs with such a reason is not a valid basis for

restricting the internal communications of the OAG." Id.

But, if the documents defendants seeks become relevant to the administrative proceeding,

I will modify the order to permit other lawyers in the Attorney General's Office to have access to

them under the protective order.  Indeed, if as the defendants suggest, they are contemplating

settling the civil and administrative simultaneously, and they can convince me that the lawyers

engaged in both cases need them to prepare for and engage in meaningful settlement discussions,

I will also modify the protective order accordingly.

## CONCLUSION

Plaintiffs have a valid interest in seeking to limit access to the document at issue, given their personal nature.  It is therefore not unreasonable for plaintiffs to seek to limit access to these documents to only those attorneys working on the civil case or  to require defendants to expend the resources necessary to insure that this occurs.

An Order accompanies this Memorandum Opinion.


Dated:                                                              _____
                                                                           JOHN M. FACCIOLA
                                                                           UNITED STATES MAGISTRATE JUDGE